**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| CHARITY S. BUCHANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. 3:08-CV-754-TFM** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*, Charity S. Buchannon ("Buchannon") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. The Appeals Council granted Buchannon's request for review, vacated the hearing decision, and remanded for further proceedings. A new administrative hearing yielded a decision unfavorable to Buchannon. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

Buchannon, age 24 at the time of the hearing, completed twelfth grade. Harris's past work experience includes employment as a cashier, janitor, and housekeeper in a nursing home.[1] She has not engaged in substantial gainful work activity since the alleged onset date of July 25, 2003, and meets the insured status requirements of the Act through June 30, 2005.[2] Consequently, she must establish disability by that date.[3] Buchannon claims she is unable to work because of chronic pain in her back, hands, legs and feet.[4]

Medical records show Buchannon was first examined by her treating physician, Dr. Adahli Estrada-Massey ("Dr. Massey"), a board-certified rheumatologist, in September, 2003. Dr. Massey diagnosed erythema nodosum, oligoarthritis, polyarthralgias, and polymyalgias. Dr. Massey prescribed Prednisone and wrote a note that Buchannon should not work "indefinitely."[5] Buchannon was instructed to continue Prednisone when she returned for follow-up in November, 2003. In January, 2004, Buchannon complained of pain all over and was prescribed Trazodone upon a diagnosis of diffuse pain syndrome.[6] Dr.

---

[1] R. at 90, 270.

[2] R. at 24.

[3] R. at 22-23.

[4] R. at 89.

[5] R. at 209.

[6] R. at 26, 214. A medical expert, Dr. Jack Evans, explained during Buchannon's hearing that Trazodone is an antidepressant commonly used to ease mild to moderate pain and facilitate sleep. R. at 267.

Massey listed fibromyalgia syndrome on Buchannon's treatment notes from this visit forward.

Buchannon's next visit to Dr. Massey took place in August, 2004, when she was diagosed with diffuse pain syndrome and migraine headaches. Buchannon received prescriptions for Relpax and Ultram, in addition to Trazodone.[7] Buchannon was instructed to return as needed, and her next visit was one year later in August, 2005. At this visit Buchannon was diagnosed with fibromyalgia syndrome, with no evidence of connective tissue disease. Dr. Massey prescribed Ultram and Nortriptyline.[8] Another year passed between visits, and in September, 2006, Buchannon's prescriptions were limited to Tylenol due to her pregnancy.[9] Buchannon returned to Dr. Massey in February, 2007 and was prescribed Tramadol, Imitrex, Tylenol Arthritis, and Aleve.[10] Dr. Massey completed a physical capacities evaluation which assessed Buchannon as able to lift/carry ten pounds occasionally, sit four hours and stand/walk four hours in and eight-hour day and does not require an assistive device, perform gross and fine manipulation, and occasionally perform pushing/pulling with all extremities, climb stairs and balance, bend, stoop, and reach.[11] Dr.

---

[7] R. at 26-27, 213.

[8] R. at 27, 212. Dr. Evans testified that Nortriptyline is an antidepressant that helps lower the pain threshold and is given at night because a possible side effect is drowsiness. R. at 267.

[9] R. at 27, 211.

[10] R. at 27, 235.

[11] R. at 230.

Massey also completed a clinical assessment of fatigue/weakness wherein she found Buchannon was fatigued/weak to such an extent as to negatively affect adequate performance of daily activities or work.[12] Finally, Dr. Massey completed a clinical assessment of Buchannon's pain which she rated as present to such an extent as to be distracting to adequate performance of daily activities or work.[13]

Dr. Robert M. Combs performed a consultative examination of Buchannon in April, 2005. X-rays results were normal for hands, and generally normal with some evidence of spasm in Buchannon's spine. Buchannon's grip strength was 5 out of 5. Dr. Combs noted no abnormality in extremities, no joint deformity, no atrophy, and full range of joint motion with some resistance. Buchannon carried a cane but did not seem to need it for maneuvers and walking. Dr. Combs concluded Buchannon's pain pattern was compatible with fibromyalgia, but could find no physical reason to limit work activity.[14] Dr. Combs completed a physical capacities assessment based on his examination which found Buchannon is unlimited in her ability to stand, walk, and sit; able to lift and carry weights of five pounds frequently and twenty pounds occasionally; able to constantly use arms and legs, with occasional limitations on climbing, balancing, stooping, kneeling, crouching and crawling; and able to work in various environments, with an occasional limitation on

---

[12] R. at 231.

[13] R. at 234.

[14] R. at 27, 200-01.

working in high, exposed places.[15]

Buchannon visited the emergency room at East Alabama Medical Center in September, 2006, with complaints of aching all over. Her exam revealed no swelling, no redness or warmth to the joints, and no radiculopathy. The emergency room physician attributed the pain to myalgia secondary to the weight gain, water retention, and sciatic pain common in a pregnancy of 22 weeks.[16]

Dr. Kishore Chivukula performed a consultative examination of Buchannon on November 21, 2006. Buchannon was in her eighth month of pregnancy and not taking any medication. She reported being able to care for her children, but needing assistance with cooking and grocery shopping. Dr. Chivukula did not observe any wasting of muscles, but found joint swelling in the finger joints and reduced range of motion in all joints. Muscle bulk and tone in all major muscle groups were normal.[17] Although Buchannon did not use the cane prescribed for her use, she could not give full effort in hand grips or wrist/elbow movement due to pain. Dr. Chivukulu could not assess Buchannon's ability to bend forward or perform heel/toe/tandem walking due to pregnancy, although he found no clinical or electropysiological evidence of neuropathy or muscle disease.[18] Dr. Chivukula performed a physical capacities evaluation which limited Buchannon to standing up to one hour,

---

[15]R. at 203-05.

[16]R. at 27-28, 227.

[17]R. at 28, 215.

[18]R. at 28, 216.

walking up to one hour, and sitting for a total of four hours in an eight-hour day. These limitations were attributed to joint swelling and advanced pregnancy.[19] Dr. Chivukula also found Buchannon's joint swelling and pregnancy resulted in limited use of her arms and legs, as well as her ability to stoop and reach overhead.[20] Finally, Dr. Chivukula placed significant environmental restrictions on Buchannon's ability to work.[21]

The administrative record contains hearing transcripts from Buchannon's first hearing in August, 2005, and her second in March, 2007. During the 2005 hearing Buchannon described her pain and told the ALJ she did not shop for groceries or cook.[22] Again, during the March, 2007 hearing Buchannon said her mother helped her care for her two children, but she does not shop for groceries or cook.[23] Buchannon admitted that she caused a false tax return to be filed in her name when a tax preparer falsely submitted documentation of income which she did not earn. Buchannon said she realized the filing could jeopardize her disability application and told the preparer not to file the claim for refund. Later, Buchannon received a letter from the IRS referencing the unearned income, but she did not file an amended tax return to correct the fraudulent filing.[24] Under questioning by her attorney,

---

[19]R. at 220.

[20]R. at 28, 221.

[21]R. at 28, 222.

[22]R. at 285.

[23]R. at 258.

[24]R. at 255-57, 262.

Buchannon said she is able to lift her fourteen-pound baby on good days, but not when she has pain in her shoulders. She said could not walk one city block and lays down for a total of five or six hours on a typical day.[25] Buchannon takes Tramadol, acetaminophen and Tylenol Arthritis for her pain, which she rated as 8 on a scale of 1 to 10. She said the medications provide relief sometimes.[26]

Dr. Jack Evans testified as a medical expert. Dr. Evans said his review of Buchannon's medical records led him to fix April, 2005 as the onset date for fibromyalgia.[27] Dr. Evans pointed out that Dr. Massey's diagnosis of fibromyalgia was based primarily on trigger point evidence, but was not based on evidence of joint deformity or limitation, which is necessary to meet Listing 14.09.[28] Dr. Evans noted the absence of joint deformity or limitation from Dr. Comb's exam, and considered Dr. Chivukula's exam to be of limited value due to advanced pregnancy.[29] Dr. Evans told the ALJ "it is difficult to tell how much of the symptom may have been due to the pregnancy, and how much may have been due to the fibromyalgia."[30]

Dr. Evans estimated Buchannon's residual functional capacity (RFC) at sedentary,

---

[25]R. at 260.

[26]R. at 261.

[27]R. at 263.

[28]R. at 263-64, 268.

[29]R. at 264.

[30]R. at 264.

8

which he reached by combining the findings of Dr. Massey and Dr. Chivukula.[31]  Prior to Dr. Chivukula's examination in November, 2006, Dr. Evans believes Buchannon was capable of performing light work.[32] Buchannon's emergency room visit in September, 2006 was critical to Dr. Evans because that examination showed she was neurologically intact with no swelling, redness, or warmth to the joints.  Yet her November, 2006 exam showed joint swelling, perhaps due in part to pregnancy.[33]  Dr. Evans also explained Tramadol and Ultram were the same drug, used to treat mild to moderate pain.[34]

A vocational expert (VE) testified that Buchannon's past work as a cashier was light and unskilled, and her past janitorial/housekeeping work was medium and unskilled.[35]  The ALJ posed a hypothetical which modified Dr. Combs's RFC assessment by limiting sitting to six hours, and standing/walking to a total of four hours.  The hypothetical incorporated Buchannon's testimony that she could lift five pounds frequently and fourteen pounds occasionally.  The ALJ included frequent grasping and fine manipulation, with occasional use of feet, climbing, balancing, stooping, kneeling, crouching, and crawling.  Finally, the ALJ incorporated mild to moderate pain that occasionally interferes with concentration,

---

[31] R. at 264-65.

[32] R. at 265, 267-68.

[33] R. at 268-69.

[34] R. at 267.

[35] R. at 270.

persistence, and pace.[36] The VE said light and unskilled work with a sit/stand option would include work as a ticket seller at movie theaters, bench inspector, or small product inspector. Additional jobs at the sedentary level which fit this RFC are garment sorter, cup folder, or telephone solicitor.[37] When asked whether a person with the physical capacities and pain submitted by Dr. Massey could work, the VE said all work would be precluded for such a person.[38] The VE said Buchannon's allegations of pain, if true, would preclude all work.[39] Under questioning by Buchannon's attorney, the VE reiterated the opinion by Dr. Chivukula was impacted significantly by Buchannon's pregnancy.[40] The attorney also questioned the VE about Dr. Massey's instructions, dated September, 2003, that Buchannon was unable to work. The attorney described the report as "conclusory," but nonetheless sought the VE's opinion as to her ability to work when she was not pregnant.[41]

The ALJ decision accorded no weight to Dr. Massey's opinion. The ALJ found Dr. Massey's March, 2007 PCE and assessment of fatigue/weakness to be unreliable because she had not prescribed Buchannon medication for severe pain. The ALJ also found little

---

[36]R. at 271-72.

[37]R. at 272-73.

[38]R. at 273.

[39]R. at 273-74.

[40]R. at 274-75.

[41]R. at 275-76.

objective evidence to support a diagnosis of fibromyalgia.[42] Dr. Chivukula's assessment of Buchannon in November, 2006 was also accorded no weight because the joint swellings and pain detected during his examination are common in pregnancy.[43] Dr. Combs's examination report from April, 2005 was accorded substantial weight and found to be consistent with the record of evidence. Dr. Evans's testimony was accorded significant weight and found to be consistent with the record as well. The ALJ found Buchannon is severely impaired by fibromyalgia syndrome, polyarthralgias, migraine headaches, and obesity.[44] Despite these impairments, the ALJ determined Buchannon did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[45]

The ALJ found Buchannon has the residual functional capacity (RFC) to perform a range of light work activity. The RFC incorporated an ability to sit one hour without interruption for a total of six hours and stand/walk 30 minutes without interruption for a total of four hours; lift/carry and push/pull five pounds frequently and 14 pounds occasionally; frequently perform fine manipulation and simple grasping; occasionally push/pull with feet, bend, stoop, crawl, climb stairs/ramps, crouch, kneel, balance, and reach. The RFC incorporated mild to moderate pain which occasionally interferes with concentration,

---

[42]R. at 28.

[43]R. at 29.

[44]R. at 25-26.

[45]R. at 25.

persistence, or pace.[46] The ALJ determined Buchannon's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence, and the record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. Buchannon's credibility was also discounted by the ALJ because she caused a false income tax return to be filed in her name.[47]

The ALJ found Buchannon's RFC did not permit a return to past work, but adopted the VE's testimony to find her able to work as a ticket seller, bench inspector, garment sorter, or telephone solicitor.[48] Accordingly, the ALJ determination that Buchannon could perform these occupations directed a conclusion that she is not disabled, and therefore not entitled to benefits under the Act.[49]

### III.  ISSUES

Buchannon raises two issues for judicial review:

1. Whether the ALJ misapplied the Eleventh Circuit pain standard.

2. Whether the ALJ erred by failing to credit the opinion of the treating rheumatologist.

### IV.  DISCUSSION

---

[46]R. at 25.

[47]R. at 30.

[48]R. at 30-31.

[49]R. at 31. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

1.     **<u>The ALJ did not misapply the Eleventh Circuit pain standard.</u>**

Buchannon argues her testimony of pain and subjective symptoms established disability under the Eleventh Circuit pain standard. The Commissioner responds that the ALJ properly evaluated the credibility of Buchannon's subjective complaints, correctly applied the Eleventh Circuit pain standard, and issued a finding supported by substantial evidence.    The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In Buchannon's case, she must prove she was disabled as of June 30, 2005.[50] The Eleventh Circuit has set forth criteria for establishing a disability based on testimony of pain and other symptoms. It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). A "claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th

---

[50]R. at 22-23.

Cir. 1995). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

Under *Wilson*, a claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence. *Brown* at 1236. An ALJ's credibility findings are an important factor in the application of the pain standard. *Wilson, id*. Here, the ALJ found the record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged.[51] Buchannon seeks to use Dr. Massey's treatment records to establish listing-level disability from fibromyalgia, but the ALJ credited Dr. Evans's testimony that an absence of "joint deformity or limitation" in the records precluded disability on that basis.[52] The lack of significant joint abnormality continued beyond Buchannon's eligibility for disability, as her September, 2006 examination at East Alabama Medical Center showed no swelling, no redness or warmth to the joints, and no radiculopathy.[53] Buchannon's complaints of chronic and severe pain

---

[51]R. at 30.

[52]R. at 264, 268.

[53]R. at 227, 264.

related to connective tissue disease were inconsistent with her infrequent visits and prescriptions for mild to moderate pain. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing claimant's lack of consistent complaints, treatment, and use of pain medication in affirming ALJ's conclusion that "pain standard" was not met.); *see also Watson v. Heckler*, 738 F.2d 1169, 1172-73 (11th Cir. 1984) (noting that, when considering allegations of pain, an ALJ must weigh the overall record, including frequency of treatment, use of medications, and conflicting statements).

Even after the ALJ found the record evidence does not meet the criteria for the pain standard, he also found Buchannon is not credible because she caused a false income tax refund to be filed in her name. It is telling that Buchannon's own testimony shows she withdrew her approval for the IRS filing when she realized it could impact her disability application.[54] This Court must accept the ALJ's credibility finding, as the ALJ articulated explicit and adequate reasons for his finding. *Id.* Furthermore, the Court has found other cause to doubt Buchannon's testimony regarding her activities, as it was inconsistent with the information she provided Dr. Chivukula. In her first hearing in 2005, Buchannon said she did not cook or shop for groceries.[55] During her examination by Dr. Chivukula in 2006 she reported that she cooks and shops for groceries with help.[56] In the second administrative

---

[54] R. at 255.

[55] R. at 285.

[56] R. at 215.

hearing four months later, she again testified that she did not cook or shop.[57]

Notwithstanding these inconsistencies in Buchannon's representations, the Court considered remanding this case to clarify the mixed results of Dr. Chivukula's examination. However, even if Buchannon were re-examined for disability when a pregnancy did not cloud the results, her eligibility for benefits has long since expired, as she must have established disability on or before June 30, 2005. The ALJ articulated adequate reasons to reject Buchannon's subjective testimony about pain and disability, based on credibility findings, so that the pain standard was not met in this case. The record supports his findings, and there is no reversible error as to this issue.

### 2. **The ALJ did not err by rejecting the opinion of the treating physician.**

Buchannon argues the ALJ did not give proper weight to Dr. Massey's opinion as the treating physician. The Commissioner responds the medical opinion was correctly evaluated under existing precedent and regulations.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241, citing *Lewis*.

---

[57]R. at 258

16

When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam). Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). "The weighing of evidence is a function of the factfinder, not of the district court. The question is not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the Secretary." *Graham v. Bowen,* 790 F.2d 1572, 1575 (11th Cir. 1986).

Buchannon argues the ALJ erred because he discredited Dr. Massey's opinions that she cannot work. In September, 2003, Dr. Massey instructed Buchannon to avoid work "indefinitely."[58] Buchannon conceded during the administrative hearing that this document is a conclusory report without the support appropriate for a persuasive medical opinion under *Phillips*.[59] The next opinion by Dr. Massey is reflected in a physical capacities evaluation and fatigue/weakness form on March 19, 2007. These documents indicate that the physical abilities Buchannon still possessed on this date were limited due to extreme fatigue and weakness.[60] The ALJ found Dr. Massey's opinions of this date unreliable because she did

---

[58]R. at 209.

[59]R. at 275.

[60]R. at 230-31.

not prescribe medication consistent with the severe pain Buchannon alleged.[61] The decision also noted Buchannon did not have frequent appointments with Dr. Massey, but returned on an annual basis after her erythema nodosum was resolved in January, 2004.[62] Therefore, the two opinions by Dr. Massey were either conclusory or inconsistent with the doctor's own medical records, thus providing good cause for discrediting the opinion. *See Phillips, id.* at 1241.

Buchannon argues the ALJ erred in crediting the opinions of Dr. Combs and Dr. Evans after finding they were supported by, and consistent with, clinical findings in Buchannon's examination records.[63] She bases her complaint, in part, on the date of Dr. Combs's opinion and the fact that neither credited physician is a specialist. The Court notes that Dr. Combs's opinion from April, 2005, is in fact two months prior to the date by which Buchannon must demonstrate disability, while Dr. Massey's March, 2007 opinion is almost two years past Buchannon's disability deadline of June 30, 2005. Even so, Dr. Chivukula's examination in November, 2006 showed no clinical or electropysiological evidence of neuropathy or muscle disease.[64]

The court finds the ALJ gave did not err in his decision to discredit the opinion by Dr. Massey regarding Buchannon's ability to work, but instead, correctly applied circuit

---

[61]R. at 28.

[62]R. at 29.

[63]R. at 29.

[64]R. at 28, 216.

18

precedent in his careful evaluation of the medical evidence in this case.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered herewith.


Done this 30th day of June, 2009.

                        /s/ Terry F. Moorer
                        TERRY F. MOORER
                        UNITED STATES MAGISTRATE JUDGE